IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS WALTHERS<br>3511 Highview Avenue<br>Cleveland, Ohio 44109 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| MARC GLASSMAN, INC.<br>c/o James M. Henshaw<br>121 South Main Street, Suite 520<br>Akron, OH 44308 | )<br>)<br>)<br>)<br>)<br>) | **(Jury Demand Endorsed Herein)** |
| Defendant. | ) | |

Plaintiff, Dennis Walthers, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Walthers is a resident of the city of Cleveland, county of Cuyahoga, state of Ohio.

2. Marc Glassman, Inc. ("Marcs") is an Ohio Corporation that owns and/or operates a business in the state of Ohio located at 5841 West 130th Street, Parma, Ohio 44130.

**JURISDICTION & VENUE**

3. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Walthers is alleging federal law claims under 29 U.S.C. § 2601 *et seq.*, Family and Medical Leave Act, ("FMLA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

4. This Court has personal jurisdiction over Marcs because it is a company that is registered to conduct business in this District, and at all times material to the allegations contained herein,

conducted substantial business in this District and had sufficient minimum contacts within this District.

5. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Walthers' Ohio Law claims because those claims derive from the same common core of operative facts and are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. All material events alleged in this Complaint occurred in Cuyahoga County.

7. Within 300 days of the conduct alleged below, Walthers filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC"), Charge No. 532-2021-00400 against Defendant.

8. On or about February 23, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Walthers regarding the Charge of Discrimination.

9. Walthers received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

10. Walthers filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

11. Walthers has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

12. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C.§ 1391, because it is the district court of the district, division, and county within which Marcs operated and where a substantial part of the events or omissions giving rise to the claim occurred.

## FACTS

13. Walthers is a former employee of Marcs.

14. Marcs hired Walthers as a Warehouse Shift Lead in or around February 2012.

15. Walthers was an employee in good standing with no history of meaningful discipline at the time of his termination from his employment with Marcs.

16. Walthers regularly received positive reviews and pay raises.

### A. Marcs Denied Walthers Use Of Leave Under The Families First Coronavirus Response Act.

17. On or around April 1, 2020, the Families First Coronavirus Response Act ("FFCRA") went into effect.

18. The FFCRA applies to all business with fewer than 500 employees.

19. Under the FFCRA, employers with fewer than 500 employees are required to provide workers with two weeks, or 80 hours of paid sick leave benefits if they are suffering from COVID-19 symptoms or to care for children whose school or care provider is closed or unavailable for reasons related to COVID-19.

20. Under the FFCRA, employees may also take an additional ten weeks of paid expanded family and medical leave to care for children whose school is closed or unavailable for COVID-19 related reasons.

21. Walthers' fiancé and his son have underlying health conditions and are both at a higher risk of contracting COVID-19.

22. On April 1, 2020, Walthers requested to take three weeks off from work to self-quarantine and prevent COVID-19 exposure to his fiancé and son.

23. Marcs forced Walthers to exhaust his paid time off ("PTO") in order to be off work.

24. Marcs categorized Walthers' mandatory use of PTO time as medical leave.

25. Marcs' categorizing Walthers' PTO leave as medical leave was without the protections afforded by the FFCRA or FMLA.

26. Marcs categorizing Walthers' PTO leave as medical leave was Marcs' denial of FFCRA leave to Walthers.

27. Alternatively, Marcs' categorizing Walthers' PTO leave as medical leave denied FFCRA leave to Walthers.

28. Alternatively, Marcs' categorizing Walthers' PTO leave as medical leave denied FMLA leave to Walthers.

29. Marcs failed to inform Walthers that he was entitled to take FFCRA to care for his immediate family members for COVID-19 related reasons.

30. Marcs failed to inform Walthers that he was entitled to take FMLA leave to care for his immediate family members for COVID-19 related reasons.

31. Marcs' failure to notify Walthers that he was entitled to take FFCRA interfered with Walthers' right to take protected leave.

32. Marcs' failure to notify Walthers that he was entitled to take FFCRA leave violates the FFCRA.

33. Marcs' failure to notify Walthers that he was entitled to take FMLA leave interfered with Walthers' right to take protected leave.

34. Marcs' failure to notify Walthers that he was entitled to take FMLA leave violates the FFCRA.

35. Marcs' forcing Walthers to exhaust his PTO interferes with Walthers' right to take protected leave.

36. Marcs forcing Walthers to exhaust his paid time off violates the FFCRA.

37. Marcs' categorizing Walthers' PTO leave as medical leave interferes with Walthers' right to take protected leave.

38. Marcs' categorizing Walthers' PTO leave as medical leave violates the FFCRA.

39. Walthers was off work on PTO medical leave from April 1, 2020 – April 27, 2020.

### B. Marcs Retaliate Against Walthers Upon His Return From Leave For Covid-19 Related Leave

40. On or about April 27, 2020, Walthers returned to work and was treated differently by his supervisors and coworkers.

41. On or about April 27, 2020, Marcs changed Walthers from first shift and assigned him to work the second shift.

42. Walthers had more seniority than similarly situated employees and should have been able to work one of his preferred shifts.

43. Walthers' preferred shift was the first or third shift.

44. Marcs were aware that Walthers' preferred shift was first or third shift.

45. Prior to Walthers taking PTO leave for COVID-19 related reasons, Marcs had allowed Walthers to choose his preferred work shift.

46. Marcs changed Walthers' shift because Walthers exercised his right to be off work for COVID-19 related reasons.

47. Marcs changing Walthers' shift on the basis that Walthers exercised his right to be off work under the FFCRA interfered with Walthers' right to take protected leave.

48. Marcs' changing Walthers' shift because of Walthers exercising his right to be off work under the FFCRA violates the FFCRA.

49. Marcs' changing Walthers' shift because Walthers exercised his right to be off work under the FFCRA is retaliation.

50. Marcs' changing Walthers' shift is intentional retaliation against Walthers on the basis of Walthers taking FFCRA protected leave.

51. Marcs' changing Walthers' shift is retaliation done knowingly against Walthers on the basis of Walthers taking FFCRA protected leave.

52. Marcs' changing Walthers' shift is retaliation done willingly against Walthers on the basis of Walthers taking FFCRA protected leave.

### C. Walthers Reports Racist, Anti-Semetic Conduct Of His Manager, Tim Borwand, And Marcs Terminate Walthers' Employment

53. On or about May 30, 2020, Walthers' manager, Tim Borwand posted extremely offensive, anti-Semitic, and racist posts on Facebook. ("Anti-Semitic and Racist Facebook Posts").

54. The first of Borwand's Anti-Semitic and Racist Facebook Posts featured a two-liter bottle of Mountain Dew with a photoshopped label that said, "Hitler did nothing wrong."

55. Borwand posted a caption under the anti-Semitic Mountain Dew post saying, "I love this new Mountain Dew."

56. The second of Borwand's Anti-Semitic and Racist Facebook Posts included a comment posted by Borwand referring to recent protests stating, "If I saw protestors in the street, I'd run them over."

57. The third of Borwand's Anti-Semitic and Racist Facebook Posts included a comment posted by Borwand referring to recent protests stating, "Before you go robbing and looting look up how many Hispanics were abused by the police."

58. Offended and disgusted by Borwand's Anti-Semitic and Racist Facebook Posts, Walthers reported Borwand's posts to Chad Packard, General Manager of Operations.

59. Packard contacted Bob Gutty, Vice President, and informed him of Borwand's Anti-Semitic and Racist Facebook Posts.

60. Gutty contacted Borwand and instructed him to remove the Anti-Semitic and Racist Facebook Posts.

61. Gutty instructed Borwand to remove the Anti-Semitic and Racist Facebook posts because they were inappropriate, offensive, racist, and Anti-Semitic.

62. Walthers feared retaliation from Borwand for reporting his Anti-Semitic and Racist Facebook posts and requested that Marcs not allow him to work with Borwand.

63. A reasonable person in Walthers' position would have feared retaliation from a manager whose Anti-Semitic and Racist Facebook Posts they had reported.

64. Walthers' fear of retaliation from Borwand for reporting his Anti-Semitic and Racist Facebook Posts was reasonable.

65. Walthers' request of Marcs to not work with Borwand was reasonable.

66. Marcs denied Walthers' request not to work with Borwand and they scheduled Walthers and Borwand to work together during Walthers' next shift.

67. Prior to the beginning of his next shift, Marcs texted Walthers telling him that if he did not come in to work his shift, Marcs would assume that Walthers was quitting.

68. On May 31, 2020, Walthers reported to work and was immediately terminated by Jim, a shift manager, and a peer of Borwand.

69. Marcs' termination of Walthers was in retaliation for Walthers reporting Borwand's Anti-Semitic and Racist Facebook Posts.

70. Marcs' termination of Walthers was in retaliation or Walthers taking protected COVID-19 related leave.

71. Marcs' assertion for terminating Walthers has no basis in fact.

72. Marcs' assertion for terminating Walthers did not actually motivate Marcs' decision to terminate Walthers.

73. Marcs' assertion for terminating Walthers was insufficient to motivate the termination of Walthers.

74. Marcs' assertion for terminating Walthers was pretext to terminate Walthers.

75. Marcs did not terminate similarly situated employees for similar conduct they claimed to terminate Walthers for.

76. Marcs terminated Walthers because he requested to be off work under the FFCRA.

77. Marcs terminated Walthers in retaliation for asking about FMLA leave.

78. Before May 31, 2020, Walthers had no meaningful history of disciplinary action.

79. Marcs' decision to skip progressive disciplinary steps for Walthers is an adverse employment action.

80. There is a causal connection between Walthers' use of medical leave and Marcs' adverse actions against Walthers, including changing his work shift, forcing him to work with a manager whose anti-Semitic and racist conduct he had reported, and/or terminating Walthers' employment.

81. As a result of being wrongfully terminated, Walters has suffered and will continue to suffer damages.

**COUNT I: RETALIATORY TERMINATION IN VIOLATION OF THE FFCRA**

82. Walthers restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

83. Section 5104 of the FFCRA provides that it "shall be unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee who (1) takes [EPSL]

leave ..., and (2) has filed any complaint or instituted or caused to be instituted any proceeding under or related to [use of EPSL] (including a proceeding that seeks enforcement of [the EPSL provisions of the FFCRA]), or has testified or is about to testify in any such proceeding."

84. Walthers' time off request to Marcs concerning his reasonable belief that he was entitled to pay while on a self-quarantine under the FFCRA qualified as "fil[ing] a complaint" within the meaning of the FFCRA.

85. On April 21, 2020, Walthers engaged in protected activity by asserting his reasonable belief that he was entitled to pay while on a self-quarantine under the FFCRA to Marcs.

86. After Walthers engaged in protected activity under the FFCRA, Marcs terminated his employment.

87. Marcs terminated Walthers in retaliation for his complaints regarding his perceived rights under the FFCRA.

88. In terminating Walthers, Marcs willfully violated section 5104 of EPSLA.

89. Marcs' willful violation of the FFCRA and the EPSLA constitutes a violation of the FLSA, 29 U.S.C. §215(a)(3).

90. There is a casual link between the adverse actions and the employment actions herein, including the termination of Walthers.

91. As a result of Marcs acts, Walthers has suffered and will continue to suffer damages.

## COUNT II: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

92. Walthers restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

93. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

94. Marcs is a covered employer under the FMLA.

95. During his employment, Walthers qualified for FMLA leave.

96. During his employment, Walthers asked for information about FMLA leave, but was denied the opportunity to do so by Marcs.

97. Marcs failed to provide Walthers with a Notice of Eligibility after his requests for FMLA leave.

98. Marcs unlawfully interfered with Walthers exercise of his rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

99. Marcs violated section 825.300(c)(1) of the FMLA and interfered with Walthers' FMLA rights when Marcs failed to approve Walthers for use of FMLA leave.

100. As a direct and proximate result of Marcs' conduct, Walthers is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT III: RETALIATION IN VIOLATION OF TITLE VII

101. Walthers restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

102. As a result of the racist and discriminatory conduct described above, Walthers complained to Defendants about the discrimination he was experiencing including the Facebook posts.

103. Subsequent to Walthers reporting racist conduct and discrimination to Marcs, Marcs terminated Walthers' employment.

104. Defendant's actions were retaliatory in nature based on Walthers' opposition to the unlawful discriminatory conduct.

105. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Walthers, he suffered and will continue to suffer damages.

### COUNT IV: RETALIATION IN VIOLATION OF R.C. §4112.02(I)

106. Walthers restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

107. As a result of the Defendant's discriminatory conduct described above, Walthers complained about the discrimination he was experiencing.

108. Subsequent to Walthers reporting discrimination to Marcs, Marcs terminated Walthers' employment.

109. Defendant's actions were retaliatory in nature based on Walthers' opposition to the unlawful discriminatory conduct.

110. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

111. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Walthers, he suffered and will continue to suffer damages.

### DEMAND FOR RELIEF

WHEREFORE, Dennis Walthers demands from Marcs the following:

(a) Issue an order requiring Marcs to restore Walthers to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Walthers for lost wages, emotional distress, liquidated damages, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorney's fees and non-taxable costs for Walthers claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Fred M. Bean*
Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)
David E. Byrnes (0086975)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: Fred.Bean@spitzlawfirm.com
Taurean.Shattuck@spitzlawfirm.com
David.Byrnes@spitzlawfirm.com

*Attorneys For Plaintiff Dennis Walthers*

## JURY DEMAND

Plaintiff Dennis Walthers demands a trial by jury by the maximum number of jurors permitted.

*/s/ Fred M. Bean*
Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)
David E. Byrnes (0086975)
**THE SPITZ LAW FIRM, LLC**